# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| HAYES LEMMERZ INTERNATIONAL | ) | Case No. 01-11490 (MFW) |
| INC., et al. | ) | Jointly Administered |
|  | ) |  |
| Debtors. | ) |  |
| ——————————————————— | ) |  |
|  | ) |  |
| HLI CREDITOR TRUST, | ) |  |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | Adversary No. 03-58493 |
|  | ) |  |
| METAL TECHNOLOGIES, INC., d/b/a | ) | **Related to Docket No. 127** |
| METAL TECHNOLOGIES WOODSTOCK, | ) |  |
| LTD., | ) |  |
|  | ) |  |
| Defendant. | ) |  |
|  | ) |  |

### HLI CREDITOR TRUST'S RESPONSE IN
### OPPOSITION TO DEFENDANT METAL
### TECHNOLOGIES, INC.'S  MOTION FOR CORRECTION
### OF CLERICAL MISTAKE OR TO ALTER OR AMEND JUDGMENT

Norman L. Pernick (No. 2290)
Linda Richenderfer (No. 4138)
Chad J. Toms (No. 4155)
Saul Ewing LLP
222 Delaware Avenue; P.O. Box 1266
Wilmington, Delaware 19899-1266
Telephone: (302) 421-6800
Facsimile: (302) 421-6813

John S. Delnero
Andrew P.R. McDermott
Bell, Boyd & Lloyd LLC
70 West Madison Street; Suite 1700
Chicago, Illinois  60602
Telephone:  (312) 372-1121
Facsimile:  (312) 827-8000

Attorneys for HLI Creditor Trust

Plaintiff HLI Creditor Trust (the "HLI Trust") respectfully submits its Response in Opposition to Defendant Metal Technologies, Inc.'s ("Defendant" or "MTI") Motion for Correction of Clerical Mistake or to Alter or Amend Judgment (the "Motion").

## INTRODUCTORY STATEMENT

This Court should deny the Motion because it was filed solely for the purpose of frustrating the HLI Trust's post-judgment collection efforts.  MTI defended this action – captioned "HLI Creditor Trust v. Metal Technologies, Inc., d/b/a Metal Technologies Woodstock, Ltd." – for over two years without seeking to "correct" the defendant's name.  Approximately two weeks before the trial in this matter and approximately one week before the parties submitted a pre-trial memorandum, MTI closed its Woodstock entity.  At the time the parties submitted the joint pretrial memorandum on December 1, 2005, MTI knew that the Woodstock facility was closed but did not disclose that information to the HLI Trust.

Throughout this case, the named Defendant has been Metal Technologies, Inc., d/b/a Metal Technologies Woodstock, Ltd.  The Defendant has never raised any issue concerning the identification of the Defendant in this manner and has, in fact, filed numerous documents and responded to discovery requests, including requests to admit, indicating that the proper defendant in this case is "Metal Technologies, Inc." More specifically, the Defendant has admitted that "Metal Technologies, Inc." received the transfers identified in the HLI Trust's complaint.

MTI's Motion is also defective under Federal Rule of Civil Procedure 60(a).  Even if the judgment did contain an error, it would be a judicial mistake subject to reconsideration under Rule 60(b) or appeal – not a clerical error.  Since MTI has not

moved for reconsideration under Rule 60(b), its only remedy for any such error is limited to appeal.

## ARGUMENT

MTI has waived any claim that it is not the proper defendant in this case. Under Bankruptcy Rule 7012(b), a defendant is required to raise certain defenses, including lack of jurisdiction under the person, improper venue, insufficiency of process or insufficiency of service of process, in its initial response to the complaint. If a motion based on those grounds is not timely filed, it is waived. In this case, MTI is essentially seeking to make a lack of jurisdiction or sufficiency of process argument post-judgment. The named defendant in this action, Metal Technologies, Inc., d/b/a Metal Technologies Woodstock, was served with the complaint. Until two weeks prior to the trial in this matter, the Defendant had never contended that it was an improper party or that service of process was insufficient because it was not made upon its subsidiary, Metal Technologies Woodstock, Ltd. As a result, MTI should be precluded from making any Rule 7012(b) argument.

More importantly, MTI issued responses to the HLI Trust's requests to admit (the "Responses," attached hereto as Exh. A). In the Responses, the Defendant admitted, among other things, "that [each of the transfers sought to be recovered] was made to or for the benefit of Defendant." (See, e.g., Exh. A at Response 2, 12, 22.) If the Defendant was improperly named in this case, MTI should have denied these – and other – requests. Instead, it answered in the affirmative, confirming that the correct defendant, Metal Technologies, Inc., was named in this case.

Even if MTI correctly argues that it preserved its right to challenge the name of the defendant in this case, it is not entitled to relief under Rule 60(a). MTI asserts that the

Court's judgment, which references "Metal Technologies, Inc., d/b/a Metal Technologies Woodstock, Ltd.", is a clerical mistake and, therefore, subject to correction under Rule 60(a).  However, Rule 60(a) is not applicable here since MTI is asserting that this Court made a *judicial error* and not a *clerical error*.  See, e.g., In Re Immenhausen Corp., 166 B.R. 449, 452 (Bankr. M.D. Fla. 1994) where the Court stated:

> Even a cursory reading of this Rule leaves no doubt that none of the grounds set forth in this Rule are supported by the record in this case.  The proposition urged by BHF that this Court's 'error,' if there was one, disallowing its unsecured claim by the Order of September 27, 1993, and not dealing with its unsecured claim in the Order of January 26, 1994, was a 'clerical error.'  This court is constrained to decline this proposition.  If there was an error, it was not a clerical error, but a judicial error which could and should have been corrected by a timely filed notice of appeal, which BHF failed to do.

166 B.R. 452.  See also In re Janis M. M. McReynolds a/k/a Janis Michelle Skeen a/k/a Michelle Skeen p/d/b/a Michelle Skeen Interiors, 166 B.R. 452 (Bankr. M.D. Fla. 1994).  In this case, MTI, has in fact filed a notice of appeal.  Any questions or arguments that the judgment is incorrect should be handled in connection with the appeal and not under Rule 60(a).

MTI relies on Hodge ex rel. Skiff v Hodge, 269 F.3d 155 (2nd Cir. 2001) to support its argument that the name of the defendant in this case can be amended as a clerical error.  However, Hodge is inapplicable in the present case because the "error" sought to be corrected – substituting a different party entirely – is far more serious than the error in that case – an incorrect middle name (but same person).  For that reason, this Court should disregard Hodge.

MTI's recent shift in strategy is apparently based on the fact that it shut down the Woodstock facility sometime before the parties prepared the joint pretrial statement.

Thus, MTI was aware, but did not disclose to the HLI Trust, that the Woodstock facility was closed and most likely judgment proof.    At that point, MTI attempted to shift liability to this insolvent subsidiary.

Nevertheless, although MTI has apparently shut down the Woodstock facility, it apparently continues to manufacture the same products produced at the Woodstock facility.  In fact, MTI currently sells its products to Hayes Lemmerz International – the reorganized entity sharing the same predecessor entity as the HLI Trust.  As a result, the HLI Trust may, in fact, have a claim based on alter-ego or fraudulent conveyance against MTI – even assuming that "Metal Technologies, Inc." was not the recipient of funds in this case.  MTI, however, seeks to have this Court preclude the HLI Trust from collecting its judgment by asserting that the HLI Trust agreed in the Pretrial Order that the transfers were made to the Woodstock facility.  Assuming that MTI is correct in its assertion, the stipulation for the purpose of trial should not preclude post-judgment enforcement measures by the HLI Trust against either Metal Technologies, Inc. or Metal Technologies Woodstock, Ltd.

MTI should not be permitted at this late stage to use a shell game to undermine the legitimate collection rights of the HLI Trust.  MTI has been in a superior position of knowledge concerning the receipt of transfers by Hayes Lemmerz as well as the possible shifting of product lines from the Metal Technologies' Woodstock facility to other facilities owned by Metal Technologies, Inc.

In the event that this Court does modify the judgment to limit the claim solely to Metal Technologies Woodstock, Ltd., this Court should not permit Metal Technologies, Inc. to argue that such a modification precludes any fraudulent conveyance claims or alter-ego claims which the Creditor Trust asserts it may have in this matter.  Thus, if this

Court is inclined to revise its judgment, the order should, at a minimum, state that it is without prejudice to the rights of the HLI Trust to assert any claims against MTI based on alter-ego, fraudulent conveyance or any other remedy which the HLI Trust has against MTI in this matter.

WHEREFORE, Plaintiff HLI Creditor Trust respectfully requests that this Court deny the motion of Defendant Metal Technologies, Inc. for correction of a clerical mistake or to alter or amend judgment and for such other and further relief as this Court deems just and necessary.

Dated:  February 10, 2006                    Respectfully Submitted,


/s/ Linda Richenderfer
Norman L. Pernick (No. 2290)
Linda Richenderfer (No. 4138)
Chad J. Toms (No. 4155)
Saul Ewing LLP
222 Delaware Avenue; P.O. Box 1266
Wilmington, Delaware 19899-1266
Telephone: (302) 421-6800
Facsimile: (302) 421-6813

John S. Delnero
Andrew P.R. McDermott
Bell, Boyd & Lloyd LLC
70 West Madison Street; Suite 1700
Chicago, Illinois  60602
Telephone:  (312) 372-1121
Facsimile:  (312) 827-8000

Attorneys for HLI Creditor Trust

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| HAYES LEMMERZ INTERNATIONAL, | ) | Chapter 11 |
| INC., et al. | ) | |
| | ) | Case No. 01-11490 (MFW) |
| Debtors. | ) | Jointly Administered |
| ————————————— | ) | |
| | ) | |
| HLI CREDITOR TRUST, | ) | Adversary Proceeding No. 03-58493 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| METAL TECHNOLOGIES, INC., d/b/a | ) | |
| METAL TECHNOLOGIES WOODSTOCK, | ) | |
| LTD., | ) | |
| | ) | |
| Defendant. | ) | |

## <u>CERTIFICATE OF SERVICE</u>

I, Linda Richenderfer, hereby certify that on February 10, 2006 I caused a copy of the

foregoing **HLI CREDITOR TRUST'S RESPONSE IN OPPOSITION TO DEFENDANT**

**METAL TECHNOLOGIES, INC.'S MOTION FOR CORRECTION OF CLERICAL**

**MISTAKE OR TO ALTER OR AMEND JUDGMENT** to be served as follows by First Class

Mail.

Dennis A. Meloro, Esquire
Greenberg Traurig LLP
The Brandywine Building
1000 West Street, Suite 1540
Wilmington, DE 19801

Perrin Rynders, Esquire
Mary Kay Shavers, Esquire
Varnum, Riddering, Schmidt & Howlett LLP
Bridgewater Place
P. O. Box 352
Grand Rapids, MI 49501-0352

/s/ Linda Richenderfer_____
Linda Richenderfer (No. 4138)
**SAUL EWING LLP**
222 Delaware Avenue, Suite 1200
Wilmington, Delaware 19899-1266

532686.1 2/10/06

9/22/04

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| IN RE:                                     ) | Chapter 11 |
|                                            ) | |
| HAYES LEMMERZ INTERNATIONAL    ) | No. 01-11490 (MFW) |
| INC., et al.                               ) | Jointly Administered |
|                                            ) | |
| Debtors.             ) | |
|                                            ) | |
| HLI CREDITOR TRUST,                        ) | |
|                                            ) | |
| Plaintiff,             ) | |
|                                            ) | |
| -vs-                                       ) | Adv. Proceeding No. 03-58493 |
|                                            ) | |
| METAL TECHNOLOGIES, INC., d/b/a     ) | |
| METAL TECHNOLOGIES                   ) | |
| WOODSTOCK, LTD.                           ) | |
| Defendant.             ) | |

## RESPONSE TO HLI CREDITOR TRUST'S
## FIRST SET OF REQUESTS FOR ADMISSION
## TO METAL TECHNOLOGIES, INC.

Defendant, Metal Technologies, Inc. d/b/a Metal Technologies Woodstock, Ltd., by and through its attorneys, Varnum, Riddering, Schmidt & Howlett, LLP, in response to Plaintiff's First Set of Requests for Admission states as follows:

### REQUESTS FOR ADMISSION

**Request to Admit 1:**

Admit that Debtor made a payment (hereinafter, Transfer 9334) to Defendant in the amount of $6,925.60 on or between September 14, 2001 and September 20, 2001.

<u>Response:</u>     Denied.  Check #9334 was in the amount of $11,975.04.  It was dated September 14, 2001.

**Request to Admit 2:**

Admit that Transfer 9334 was made to or for the benefit of Defendant.

Response:    Admitted.

**Request to Admit 3:**

Admit that Transfer 9334 was made in whole or partial satisfaction of a debt owed by Debtor to Defendant on the date of the transfer.

Response:    Admitted.

**Request to Admit 4:**

Admit that Transfer 9334 was not a contemporaneous exchange for new value given to Debtor.

Response:    Admitted.

**Request to Admit 5:**

Admit that Transfer 9334 was not intended by Defendant to be a contemporaneous exchange for new value given to Debtor.

Response:    Admitted.

**Request to Admit 6:**

Admit that Transfer 9334 was not made within the time required by the terms under which Debtor incurred the debt wholly or partially satisfied by Transfer 9334.

Response:    Denied.

**Request to Admit 7:**

Admit that the debt wholly or partially satisfied by Transfer 9334 was the result of an extension of credit which was not customary in Defendant's normal business operations.

Response:    Denied.

2

**Request to Admit 8:**

Admit that Transfer 9334 was made in a manner dissimilar to that by which the Debtor had previously made payments to Defendant.

> Response:    Denied that there was any material dissimilarity.

**Request to Admit 9:**

Admit that Transfer 9334 was not made according to business terms that are ordinary within Defendant's industry as a whole.

> Response:    Denied.

**Request to Admit 10:**

Admit that there was no value provided by Defendant to Debtor after the receipt of Transfer 9334.

> Response:    Denied.

**Request to Admit 11:**

Admit that Debtor made a payment (hereinafter, Transfer 9379) to Defendant in the amount of $47,900.16 on or between September 21, 2001 and September 27, 2001.

> Response:    Admitted that such payment was made on September 21, 2001.

**Request to Admit 12:**

Admit that Transfer 9379 was made to or for the benefit of Defendant.

> Response:    Admitted.

**Request to Admit 13:**

Admit that Transfer 9379 was made in whole or partial satisfaction of a debt owed by Debtor to Defendant on the date of the transfer.

> Response:    Admitted.

3

**Request to Admit 14:**

Admit that Transfer 9379 was not a contemporaneous exchange for new value given to Debtor.

　　　Response:　　Admitted.

**Request to Admit 15:**

Admit that Transfer 9379 was not intended by Defendant to be a contemporaneous exchange for new value given to Debtor.

　　　Response:　　Admitted.

**Request to Admit 16:**

Admit that Transfer 9379 was not made within the time required by the terms under which Debtor incurred the debt wholly or partially satisfied by Transfer 9379.

　　　Response:　　Denied.

**Request to Admit 17:**

Admit that the debt wholly or partially satisfied by Transfer 9379 was the result of an extension of credit which was not customary in Defendant's normal business operations.

　　　Response:　　Denied.

**Request to Admit 18:**

Admit that Transfer 9379 was made in a manner dissimilar to that by which the Debtor had previously made payments to Defendant.

　　　Response:　　Denied that there was any material dissimilarity.

**Request to Admit 19:**

Admit that Transfer 9379 was not made according to business terms that are ordinary within Defendant's industry as a whole.

4

<u>Response</u>:    Denied.

**Request to Admit 20:**

Admit that there was no value provided by Defendant to Debtor after the receipt of Transfer 9379.

<u>Response</u>:    Denied.

**Request to Admit 21:**

Admit that Debtor made a payment (hereinafter, Transfer 9470) to Defendant in the amount of $131,790.78 on or between September 28, 2001 and October 9, 2001.

<u>Response</u>:    Admitted that such payment was made on September 28, 2001.

**Request to Admit 22:**

Admit that Transfer 9470 was made to or for the benefit of Defendant.

<u>Response</u>:    Admitted.

**Request to Admit 23:**

Admit that Transfer 9470 was made in whole or partial satisfaction of a debt owed by Debtor to Defendant on the date of the transfer.

<u>Response</u>:    Admitted.

**Request to Admit 24:**

Admit that Transfer 9470 was not a contemporaneous exchange for new value given to Debtor.

<u>Response</u>:    Admitted.

**Request to Admit 25:**

Admit that Transfer 9470 was not intended by Defendant to be a contemporaneous exchange for new value given to Debtor.

5

Response:    Admitted.

**Request to Admit 26:**

Admit that Transfer 9470 was not made within the time required by the terms under which Debtor incurred the debt wholly or partially satisfied by Transfer 9470.

Response:    Denied.

**Request to Admit 27:**

Admit that the debt wholly or partially satisfied by Transfer 9470 was the result of an extension of credit which was not customary in Defendant's normal business operations.

Response:    Denied. .

**Request to Admit 28:**

Admit that Transfer 9470 was made in a manner dissimilar to that by which the Debtor had previously made payments to Defendant.

Response:    Denied that there was any material dissimilarity.

**Request to Admit 29:**

Admit that Transfer 9470 was not made according to business terms that are ordinary within Defendant's industry as a whole.

Response:    Denied.

**Request to Admit 30:**

Admit that there was no value provided by Defendant to Debtor after the receipt of Transfer 9470.

Response:    Denied.

**Request to Admit 31:**

Admit that Debtor made a payment (hereinafter, Transfer 9588) to Defendant in the amount of $68,573.42 on or between October 8, 2001 and October 12, 2001.

<u>Response:</u>    Denied.  Check #9588 was in the amount of $71,481.96.  It was paid on October 8, 2001.

**Request to Admit 32:**

Admit that Transfer 9588 was made to or for the benefit of Defendant.

<u>Response:</u>    Admitted.

**Request to Admit 33:**

Admit that Transfer 9588 was made in whole or partial satisfaction of a debt owed by Debtor to Defendant on the date of the transfer.

<u>Response:</u>    Admitted.

**Request to Admit 34:**

Admit that Transfer 9588 was not a contemporaneous exchange for new value given to Debtor.

<u>Response:</u>    Admitted.

**Request to Admit 35:**

Admit that Transfer 9588 was not intended by Defendant to be a contemporaneous exchange for new value given to Debtor.

<u>Response:</u>    Admitted.

**Request to Admit 36:**

Admit that Transfer 9588 was not made within the time required by the terms under which Debtor incurred the debt wholly or partially satisfied by Transfer 9588.

7

<u>Response</u>:    Denied.

**Request to Admit 37:**

Admit that the debt wholly or partially satisfied by Transfer 9588 was the result of an extension of credit which was not customary in Defendant's normal business operations.

<u>Response</u>:    Denied.

**Request to Admit 38:**

Admit that Transfer 9588 was made in a manner dissimilar to that by which the Debtor had previously made payments to Defendant.

<u>Response</u>:    Denied that there was any material dissimilarity

**Request to Admit 39:**

Admit that Transfer 9588 was not made according to business terms that are ordinary within Defendant's industry as a whole.

<u>Response</u>:    Denied.

**Request to Admit 40:**

Admit that there was no value provided by Defendant to Debtor after the receipt of Transfer 9588.

<u>Response</u>:    Denied.

**Request to Admit 41:**

Admit that Debtor made a payment (hereinafter, Transfer 9640) to Defendant in the amount of $59,600.88 on or between October 15, 2001 and October 22, 2001.

<u>Response</u>:    Denied.  Check #9640 was in the amount of $59,875.20.  It was paid on October 15, 2001.

**Request to Admit 42:**

Admit that Transfer 9640 was made to or for the benefit of Defendant.

Response:    Admitted.

**Request to Admit 43:**

Admit that Transfer 9640 was made in whole or partial satisfaction of a debt owed by Debtor to Defendant on the date of the transfer.

Response:    Admitted.

**Request to Admit 44:**

Admit that Transfer 9640 was not a contemporaneous exchange for new value given to Debtor.

Response:    Admitted.

**Request to Admit 45:**

Admit that Transfer 9640 was not intended by Defendant to be a contemporaneous exchange for new value given to Debtor.

Response:    Admitted.

**Request to Admit 46:**

Admit that Transfer 9640 was not made within the time required by the terms under which Debtor incurred the debt wholly or partially satisfied by Transfer 9640.

Response:    Denied.

**Request to Admit 47:**

Admit that the debt wholly or partially satisfied by Transfer 9640 was the result of an extension of credit which was not customary in Defendant's normal business operations.

Response:    Denied.

9

**Request to Admit 48:**

Admit that Transfer 9640 was made in a manner dissimilar to that by which the Debtor had previously made payments to Defendant.

Response:    Denied that there was any material dissimilarity.

**Request to Admit 49:**

Admit that Transfer 9640 was not made according to business terms that are ordinary within Defendant's industry as a whole.

Response:    Denied.

**Request to Admit 50:**

Admit that there was no value provided by Defendant to Debtor after the receipt of Transfer 9640.

Response:    Denied.

**Request to Admit 51:**

Admit that Debtor made a payment (hereinafter, Transfer 9682) to Defendant in the amount of $83,825.28 on or between October 22, 2001 and October 29, 2001.

Response:    Admitted that such payment was made on October 22, 2001.

**Request to Admit 52:**

Admit that Transfer 9682 was made to or for the benefit of Defendant.

Response:    Admitted.

**Request to Admit 53:**

Admit that Transfer 9682 was made in whole or partial satisfaction of a debt owed by Debtor to Defendant on the date of the transfer.

Response:    Admitted.

10

**Request to Admit 54:**

Admit that Transfer 9682 was not a contemporaneous exchange for new value given to Debtor.

Response:    Admitted.

**Request to Admit 55:**

Admit that Transfer 9682 was not intended by Defendant to be a contemporaneous exchange for new value given to Debtor.

Response:    Admitted.

**Request to Admit 56:**

Admit that Transfer 9682 was not made within the time required by the terms under which Debtor incurred the debt wholly or partially satisfied by Transfer 9682.

Response:    Denied.

**Request to Admit 57:**

Admit that the debt wholly or partially satisfied by Transfer 9682 was the result of an extension of credit which was not customary in Defendant's normal business operations.

Response:    Denied.

**Request to Admit 58:**

Admit that Transfer 9682 was made in a manner dissimilar to that by which the Debtor had previously made payments to Defendant.

Response:    Denied that there was any material dissimilarity.

**Request to Admit 59:**

Admit that Transfer 9682 was not made according to business terms that are ordinary within Defendant's industry as a whole.

Response:    Denied.

**Request to Admit 60:**

Admit that there was no value provided by Defendant to Debtor after the receipt of Transfer 9682.

Response:    Denied.

**Request to Admit 61:**

Admit that Debtor made a payment (hereinafter, Transfer 9774) to Defendant in the amount of $95,752.80 on or between October 29, 2001 and November 6, 2001.

Response:    Admitted that such payment was made on October 29, 2001.

**Request to Admit 62:**

Admit that Transfer 9774 was made to or for the benefit of Defendant.

Response:    Admitted.

**Request to Admit 63:**

Admit that Transfer 9774 was made in whole or partial satisfaction of a debt owed by Debtor to Defendant on the date of the transfer.

Response:    Admitted.

**Request to Admit 64:**

Admit that Transfer 9774 was not a contemporaneous exchange for new value given to Debtor.

Response:    Admitted.

**Request to Admit 65:**

Admit that Transfer 9774 was not intended by Defendant to be a contemporaneous exchange for new value given to Debtor.

12

Response:    Admitted.

**Request to Admit 66:**

Admit that Transfer 9774 was not made within the time required by the terms under which Debtor incurred the debt wholly or partially satisfied by Transfer 9774.

Response:    Denied.

**Request to Admit 67:**

Admit that the debt wholly or partially satisfied by Transfer 9774 was the result of an extension of credit which was not customary in Defendant's normal business operations.

Response:    Denied.

**Request to Admit 68:**

Admit that Transfer 9774 was made in a manner dissimilar to that by which the Debtor had previously made payments to Defendant.

Response:    Denied that there was any material dissimilarity.

**Request to Admit 69:**

Admit that Transfer 9774 was not made according to business terms that are ordinary within Defendant's industry as a whole.

Response:    Denied.

**Request to Admit 70:**

Admit that there was no value provided by Defendant to Debtor after the receipt of Transfer 9774.

Response:    Denied.

**Request to Admit 71:**

Admit that Debtor made a payment (hereinafter, Transfer 9897) to Defendant in the amount of $201,478.13 on or between November 7, 2001 and November 9, 2001.

<u>Response:</u>    Denied.  Check #9897 was in the amount of $203,576.02.  It was paid on November 7, 2001.

**Request to Admit 72:**

Admit that Transfer 9897 was made to or for the benefit of Defendant.

<u>Response:</u>    Admitted.

**Request to Admit 73:**

Admit that Transfer 9897 was made in whole or partial satisfaction of a debt owed by Debtor to Defendant on the date of the transfer.

<u>Response:</u>    Admitted.

**Request to Admit 74:**

Admit that Transfer 9897 was not a contemporaneous exchange for new value given to Debtor.

<u>Response:</u>    Admitted.

**Request to Admit 75:**

Admit that Transfer 9897 was not intended by Defendant to be a contemporaneous exchange for new value given to Debtor.

<u>Response:</u>    Admitted.

**Request to Admit 76:**

Admit that Transfer 9897 was not made within the time required by the terms under which Debtor incurred the debt wholly or partially satisfied by Transfer 9897.

14

Response:     Denied.

**Request to Admit 77:**

Admit that the debt wholly or partially satisfied by Transfer 9897 was the result of an extension of credit which was not customary in Defendant's normal business operations.

Response:     Denied.

**Request to Admit 78:**

Admit that Transfer 9897 was made in a manner dissimilar to that by which the Debtor had previously made payments to Defendant.

Response:     Denied that there was any material dissimilarity.

**Request to Admit 79:**

Admit that Transfer 9897 was not made according to business terms that are ordinary within Defendant's industry as a whole.

Response:     Denied.

**Request to Admit 80:**

Admit that there was no value provided by Defendant to Debtor after the receipt of Transfer 9897.

Response:     Denied.

**Request to Admit 81:**

Admit that Debtor made a payment (hereinafter, Transfer 9949) to Defendant in the amount of $59,875.30 on or between November 14, 2001 and November 20, 2001.

Response:     Admitted that such payment was made on November 14, 2001.

**Request to Admit 82:**

Admit that Transfer 9949 was made to or for the benefit of Defendant.

15

Response:    Admitted.

**Request to Admit 83:**

Admit that Transfer 9949 was made in whole or partial satisfaction of a debt owed by Debtor to Defendant on the date of the transfer.

Response:    Admitted.

**Request to Admit 84:**

Admit that Transfer 9949 was not a contemporaneous exchange for new value given to Debtor.

Response:    Admitted.

**Request to Admit 85:**

Admit that Transfer 9949 was not intended by Defendant to be a contemporaneous exchange for new value given to Debtor.

Response:    Admitted.

**Request to Admit 86:**

Admit that Transfer 9949 was not made within the time required by the terms under which Debtor incurred the debt wholly or partially satisfied by Transfer 9949.

Response:    Denied.

**Request to Admit 87:**

Admit that the debt wholly or partially satisfied by Transfer 9949 was the result of an extension of credit which was not customary in Defendant's normal business operations.

Response:    Denied.

16

**Request to Admit 88:**

Admit that Transfer 9949 was made in a manner dissimilar to that by which the Debtor had previously made payments to Defendant.

Response:    Denied that there was any material dissimilarity.

**Request to Admit 89:**

Admit that Transfer 9949 was not made according to business terms that are ordinary within Defendant's industry as a whole.

Response:    Denied.

**Request to Admit 90:**

Admit that there was no value provided by Defendant to Debtor after the receipt of Transfer 9949.

Response:    Denied.

**Request to Admit 91:**

Admit that Debtor made a payment (hereinafter, Transfer 10003) to Defendant in the amount of $59,472.00 on or between November 21, 2001 and November 27, 2001.

Response:    Admitted that such payment was made on November 21, 2001.

**Request to Admit 92:**

Admit that Transfer 10003 was made to or for the benefit of Defendant.

Response:    Admitted.

**Request to Admit 93:**

Admit that Transfer 10003 was made in whole or partial satisfaction of a debt owed by Debtor to Defendant on the date of the transfer.

Response:    Admitted.

17

**Request to Admit 94:**

Admit that Transfer 10003 was not a contemporaneous exchange for new value given to Debtor.

  <u>Response:</u>  Admitted.

**Request to Admit 95:**

Admit that Transfer 10003 was not intended by Defendant to be a contemporaneous exchange for new value given to Debtor.

  <u>Response:</u>  Admitted.

**Request to Admit 96:**

Admit that Transfer 10003 was not made within the time required by the terms under which Debtor incurred the debt wholly or partially satisfied by Transfer 10003.

  <u>Response:</u>  Denied.

**Request to Admit 97:**

Admit that the debt wholly or partially satisfied by Transfer 10003 was the result of an extension of credit which was not customary in Defendant's normal business operations.

  <u>Response:</u>  Denied.

**Request to Admit 98:**

Admit that Transfer 10003 was made in a manner dissimilar to that by which the Debtor had previously made payments to Defendant.

  <u>Response:</u>  Denied that there was any material dissimilarity.

**Request to Admit 99:**

Admit that Transfer 10003 was not made according to business terms that are ordinary within Defendant's industry as a whole.

18

Response:    Denied.

**Request to Admit 100:**

Admit that there was no value provided by Defendant to Debtor after the receipt of Transfer 10003.

Response:    Denied.

**Request to Admit 101:**

Admit that Debtor made a payment (hereinafter, Transfer 10171) to Defendant in the amount of $.00 on December 4, 2001.

Response:    Denied that any transfer was made via check #10171.

**Request to Admit 102:**

Admit that Transfer 10171 was made to or for the benefit of Defendant.

Response:    Not applicable.

**Request to Admit 103:**

Admit that Transfer 10171 was made in whole or partial satisfaction of a debt owed by Debtor to Defendant on the date of the transfer.

Response:    Not applicable.

**Request to Admit 104:**

Admit that Transfer 10171 was not a contemporaneous exchange for new value given to Debtor.

Response:    Not applicable.

**Request to Admit 105:**

Admit that Transfer 10171 was not intended by Defendant to be a contemporaneous exchange for new value given to Debtor.

19

Response:    Not applicable.

**Request to Admit 106:**

Admit that Transfer 10171 was not made within the time required by the terms under which Debtor incurred the debt wholly or partially satisfied by Transfer 10171.

Response:    Not applicable.

**Request to Admit 107:**

Admit that the debt wholly or partially satisfied by Transfer 10171 was the result of an extension of credit which was not customary in Defendant's normal business operations.

Response:    Not applicable.

**Request to Admit 108:**

Admit that Transfer 10171 was made in a manner dissimilar to that by which the Debtor had previously made payments to Defendant.

Response:    Not applicable.

**Request to Admit 109:**

Admit that Transfer 10171 was not made according to business terms that are ordinary within Defendant's industry as a whole.

Response:    Not applicable.

**Request to Admit 110:**

Admit that there was no value provided by Defendant to Debtor after the receipt of Transfer 10171.

<u>Response:</u>    Not applicable.

Respectfully submitted:

VARNUM, RIDDERING, SCHMIDT & HOWLETT LLP
Attorneys for the Defendant

Dated: September 22, 2004         By: _____
                                       Michael S. McElwee (P36088)
                                       BUSINESS ADDRESS:
                                       333 Bridge Street, N.W., Suite 1700
                                       Grand Rapids, Michigan 49504
                                       (616) 336-6827

1036089/1

21

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| HAYES-LEMMERZ INTERNATIONAL, | ) | Case No. 01-11490 (MFW) |
| INC., et al. | ) | Jointly Administered |
| | ) | |
| Debtors. | ) | |
| | ) | |
| | ) | |
| HLI CREDITOR TRUST, | ) | Adversary Proceeding No. |
| | ) | 03-58493 (MFW) |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| METAL TECHNOLOGIES, INC. d/b/a | ) | |
| METAL TECHNOLOGIES | ) | |
| WOODSTOCK, LTD | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## PROOF OF SERVICE

The undersigned certifies that a copy of the **Defendant's Response to HLI Creditor Trust's First Set of Requests for Admission to Metal Technologies, Inc.** and this **Proof of Service** were sent via first-class mail, postage prepaid, upon the following this 22nd day of September, 2004:

> **John Delnero and Andrew B. Cohen**
> **Bell, Boyd & Lloyd LLC**
> **Attorneys for Plaintiff**
> **Three First National Plaza**
> **70 West Madison St., Suite 3300**
> **Chicago, IL  60602-4207**

I declare that the statement above is true and to the best of my information, knowledge and belief.

Dated:  September 22, 2004

Cindy Lou Dynema, PLS

1037126/1